THE PEOPLE EX REL. VANDEVIER, PLAINTIFF IN ERROR,
    v. THE COUNTY COURT OF ARAPAHOE COUNTY, DE-
    FENDANT IN ERROR.

JURISDICTION OF COUNTY COURT.
1. County courts possess jurisdiction concurrent with the district court
    in all cases of which they may legitimately take cognizance, and
    the power to regulate and control the settlement of estates of de-
    ceased persons is expressly conferred upon them.
2. SAME.
The county court has jurisdiction to order an administrator to bring in-
    to court funds in his hands belonging to the estate.

**3. CERTIORARI.**

Certiorari does not lie to the county court touching a matter within its jurisdiction.

*Error to the District Court of Arapahoe County.*

Messrs. SULLIVAN & MAY, for plaintiff in error.

Mr. V. D. MARKHAM and Mr. G. M. ALLEN, for defendant in error.

BISSELL, P. J., delivered the opinion of the court.

This proceeding was started by an application for a writ of certiorari to be directed to the county court of Arapahoe county. It appeared from the petition that John Vandevier had been appointed administrator of the estate of Harvey Rarick, and was engaged in winding up the estate. In the course of this administration, a controversy had arisen between the administrator and Martha Fetta, a creditor, concerning the allowance and payment of her claim. According to the allegations of the petition, the creditor had taken steps in respect to the enforcement of a judgment, and her proceedings resulted in an order by the county court, made after a hearing, that Vandevier bring into court a certain sum of money alleged to be in his hands. There was no judgment in the county court in any way concerning this matter, and what the petitioner sought to restrain or reverse by this proceeding was this order that he pay the money into court, contending that the court was without jurisdiction to make any such order. The alternative writ was issued and served, and an answer was filed to which a demurrer was interposed. On the final hearing the writ was dismissed. From this judgment, which practically determined that Vandevier was without right to prosecute the proceeding, error is brought. So far as need be considered, the answer of the county judge practically set up that the administrator had been guilty of gross mismanagement, and particular acts of maladministra-

tion were set up at length.     As an illustration, it was set out
that the representative had colluded with sundry parties,
paid claims which were not legitimate charges on the estate,
and paid money without any order or allowance by the
county court in the ordinary course of his administration.

The question principally discussed by counsel, and on the
determination of which this decision will be rested, concerns
the power of the county court as a court of probate, under
circumstances like these, to order a representative, who is
wasting the assets of his testator or intestate to turn over the
funds in his hands until his affairs can be investigated, or
until such time as he may be removed and his successor ap-
pointed.     Some question was made as to the necessity of a
showing that the right of appeal or other review was not pos-
sible under the statute, but this will be left wholly unconsid-
ered.     There is a broad distinction between the rights of a
representative of a decedent under the statute regulating the
administration of estates, and those which he possessed un-
der the general law as it existed prior to this enactment.     It
was undoubtedly true at the common law that the executor
or the administrator had the right to dispose of the personal
assets which came into his possession according to his judg-
ment of the rights of the parties, subject only to such pro-
ceedings for an accounting as might be proper in case it was
asserted that he had not proceeded according to law.     While
this rule prevailed, and during the time that administrations
were controlled by the ecclesiastical courts, courts of equity
took jurisdiction whenever a bill was filed by one showing
an interest in an estate, providing there were abundant and
sufficient allegations to show that the complainants had rights
and interests which were being jeopardized by conduct which
was illegal and likely to be destructive to the rights of the
litigant.     For this reason the early English reports, and those
containing the decisions of the chancery courts of this coun-
try in its early days, are full of cases in which the power and
the duty of a court of equity to make an order that the funds
be paid into court, whenever there was an admission of as-

sets by the representative, are fully recognized and adjudi-
cated.   Williams on Executors (6 Am. ed.), vol. 3, 2043-
2047 ; Daniell's Chancery Practice (4 Am. ed.), chap. 40,
vol. 2, 1771 ; *McKim v. Thompson*, 1 Bland's Chancery, 150 ;
*Clarkson v. De Peyster*, Hopkins Chancery Reports, 572.

That this power belongs to the courts of our state which
have the right to exercise chancery jurisdiction in cases which
may be brought to them, and that it is not taken away by the
statute regulating administrations, ought to be very clear.
County courts of this state are by the terms of the constitu-
tion and the statute given concurrent jurisdiction with the dis-
trict court in all cases of which they may legitimately take
cognizance, and the right and power to regulate and control
the settlement of the estates of deceased persons is expressly
conferred upon them by statute.   Under these circumstances,
it may well be held that those courts possess the power, which
they may exercise under proper circumstances, to order the
representative to bring funds into court and abide any further
order respecting the settlement of the estate.   It is evident
that the district court, if it could properly take cognizance
of the administration of an estate, being a court with full
chancery jurisdiction, has the right, according to the ancient
practice and the well settled law, to make all those orders
which in former times were made as a matter of course by
courts having equity jurisdiction.   The fact that ordinarily
courts of equity assumed the right to make these orders, and
made them so that it might not be possible for the ecclesias-
tical tribunal, with which they somewhat conflicted, to re-
move the fund beyond the control of an ultimate decree,
does not destroy the further reason, which would be to-day
operative, that the real purpose of the order and the object
to be accomplished was the preservation of the fund and the
estate for the benefit of him or those who might show them-
selves entitled to it.   The latter reason is of as much force
in modern times as it was under the ancient practice.   And
it would undoubtedly be held that the district court had full
power and authority to make such an order on a proper show-

ing and under proper circumstances. Since the county court with respect to matters within its jurisdiction has authority concurrent and coextensive with the district court, there inheres in it as a necessary sequence the same power to make an order of this description.

Aside from this consideration, it must be adjudged that the power is necessarily incidental to the exercise of the very full control which the statute gives it to wind up the estates of deceased persons. According to it, the administrator is without personal authority by virtue of his appointment to pay debts, distribute assets or in anywise enforce or determine the form, manner, or extent of payments or distributive shares, or in general to control and fix the proper disposition of the funds which may come into his possession. These matters are bound to be presented to the court for allowance, settlement and adjudication, and until an order be made in the premises, except in a few minor cases designated by the statute, he is without power to disburse any part of what may come into his possession as a representative. The court is charged with the duty, speaking in a definitive rather than an exact way, of marshaling the assets, determining the classes into which the debts shall be arranged, the order in which they shall be paid, the amount of the dividends properly applicable to each class, and in general with the supervision of the representative's proceedings. This being true, it must be a power incidental to the execution of this jurisdiction to order funds to be brought into court and held for further action, in order that in a proper case the estate may be conserved, and the rights of interested parties conserved and protected. It might often happen that, if the persons concerned were compelled to await the result of an application for the removal of a representative and a hearing on an issue properly made, and a suit upon a bond which might to the knowledge of the court at the very time be absolutely worthless, they would practically be remediless, and the estate would be lost and dissipated, awaiting a final determination of the proceedings which they had instituted. To avoid these

possible difficulties and dangers, and in discharge of the plenary powers which the statute confers upon the court over estates, it must be held that this court, like all others having full jurisdiction over the subject-matter, has the right and authority to preserve the corpus of an estate for the purposes of final distribution and settlement.

These considerations justified the court in rendering judgment against the petitioner on his application for the writ, and it will accordingly be affirmed.

*Affirmed.*